IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidney Martin,                              :
                    Appellant              :
                                            :
        v.                                  : No. 1934 C.D. 2016
                                            : Submitted:  May 5, 2017
Nancy Giroux, Sgt. Maloney,                :
Melanie Kosinski, and Dorina Varner,       :
sued in their individual and official      :
capacities                                 :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                          FILED: May 26, 2017


        Sidney Martin (Martin) appeals, *pro se*, a Court of Common Pleas of Erie County's (trial court) order sustaining the preliminary objections of Nancy Giroux, Sgt. Maloney, Melanie Kosinski, and Dorina Varner (collectively, Defendants) and dismissing his complaint on grounds of sovereign immunity and failure to state a cause of action.  Discerning no error, we affirm.


                                   **I.**

        The facts as alleged in the complaint, except as otherwise noted, are as follows.  Martin is currently incarcerated at the State Correctional Institution at Albion (SCI-Albion).  In early 2014, plumbers in SCI-Albion's maintenance

department became aware of a cracked valve in the water tower. The maintenance department submitted an agency purchasing request to fix the cracked valve, which then-Superintendent Nancy Giroux (Superintendent Giroux) denied. Over one year later, on the morning of March 9, 2015, SCI-Albion experienced water problems and the water for the facility had to be turned off.[1] For three days, the cells on Martin's prison unit were without running water or functioning toilets.

That same day, a water cooler holding ten gallons of water was brought to Martin's unit and prisoners were permitted to sign up to receive water.[2] In the afternoon, 14 portable toilets were brought to SCI-Albion for prisoners on the west side of the facility to use. Twenty-four additional portable toilets were provided on March 10, 2015.[3] These portable toilets became unsanitary through use and prisoners had no access to them from 8:50 p.m. on March 9, 2015, through 7:40 a.m. on March 10, 2015, because they were locked in their cells.[4]

---

[1] The Department of Corrections' (Department) responses to a grievance Martin later filed regarding this issue explained that SCI-Albion experienced an unplanned loss of water due to a leak in the water tower. SCI-Albion declared a limited state of emergency and water to the institution was shut off in an effort to conserve any remaining water. Martin attached a copy of his grievance and the Department's responses to his complaint.

[2] The Department's final appeal decision regarding Martin's grievance indicates that the water cooler jugs were replaced twice a day during the water outage. While showers could not be utilized, body wipes were provided for prisoners to clean themselves.

[3] Again, the Department's responses to Martin's grievance indicate that there were very limited resources available due to the capacity vendors could provide in one trip and the time it took to get these provisions in place while still ensuring security measures at the facility.

[4] The Department's responses to grievances also stated that the portable toilets were cleaned twice daily during the water outage. Moreover, inmates were instructed to notify staff if they needed to use a portable toilet during the nighttime hours.

At approximately 3:45 p.m. on March 10, 2015, Martin expressed his need to use the toilet, and Sgt. Maloney told him, "You will go, when we say you can go. Now take it in, or I'll write you up for loitering." (Complaint ¶ 42.) At approximately 7:35 a.m. on March 11, 2015, another sergeant refused Martin's request to use the toilet. At some point on March 11, 2015, Martin obtained a clear plastic bag, brought it back to his cell and defecated inside the bag. Throughout the three-day water shutoff, Martin had to urinate in Styrofoam cups, a coffee bag, a potato chip bag and eventually in the sink because he could not leave his cell to use a functioning toilet when he needed to. This caused a stench in Martin's cell. The water was restored to SCI-Albion by 11:15 a.m. on March 12, 2015.

Martin filed an official inmate grievance regarding the non-functioning toilets and lack of running water in his cell, as well as the alleged unsanitary conditions during the water outage. Martin's grievance was denied, and he appealed it to final review.

Martin claimed in his complaint that the Defendants' conduct was negligent because they breached their duty of care to him. Martin also alleged that their actions subjected him to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution because he was forced to live in a cell for three days without a functioning toilet or running water, thus depriving him of basic needs. Martin claimed he "has not been able to function properly" (Complaint ¶ 72) since the incident, and having to hold his bowels for extreme periods of time caused him physical discomfort, abdominal pain, severe headaches,

3

distress and embarrassment. Martin sought compensatory and punitive damages as well as costs.

Defendants filed preliminary objections arguing that Martin's negligence claim was barred by sovereign immunity because the negligent acts did not fall within an exception to this immunity. Defendants also asserted that Martin's Eighth Amendment claim failed as a matter of law because the facts did not meet either the subjective or objective prongs of the cruel and unusual punishment standard. Finally, Defendants asserted that Martin's Eighth Amendment claim failed for lack of personal involvement of any of the named Defendants. Martin filed preliminary objections to the Defendants' preliminary objections.

Following oral argument, the trial court sustained the Defendants' preliminary objections and dismissed Martin's complaint, with prejudice. This appeal followed.[5]

## II.

## A.

Martin first argues that the trial court erred in applying the incorrect standard of review because there was a genuine issue of material fact and the Defendants' preliminary objections should not have been decided without a jury

---

[5] Our review of a trial court order sustaining preliminary objections is limited to determining whether the trial court abused its discretion or erred as a matter of law. *Bussinger v. Dyne*, 76 A.3d 137, 140 n.6 (Pa. Cmwlth. 2013), *appeal denied*, 87 A.3d 817 (Pa. 2014).

first determining if Martin suffered injuries. There can be no material facts at issue when ruling on preliminary objections because all of the facts in a complaint are accepted as true. As the trial court pointed out, a "court will sustain a preliminary objection if, after accepting all well-pleaded facts as true and accepting all reasonable inferences that follow from those facts, the law will not allow recovery. . . . Only in circumstances that are free from doubt may preliminary objections be sustained." *Humphrey v. Department of Corrections*, 939 A.2d 987, 990 n.4 (Pa. Cmwlth. 2007), *aff'd*, 955 A.2d 348 (Pa. 2008) (citations omitted).

**B.**

Martin also argues that the trial court erred in finding that the Defendants were entitled to sovereign immunity because the Commonwealth is not a party and the Defendants acted outside the scope of their employment.[6] It is well established that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall . . . enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310. The fact that the Commonwealth itself is not named as a party is irrelevant as sovereign immunity has also been granted to Commonwealth employees. A "Commonwealth party" has been defined as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa. C.S. § 8501.

---

[6] Martin on appeal does not contend that if the Defendants are covered by sovereign immunity that any of the alleged conduct falls within one of the nine exceptions to immunity set forth in 42 Pa. C.S. § 8522.

As this Court has observed:

> the proper test to determine if a Commonwealth employee is protected from liability pursuant to 1 Pa. C.S. § 2310 and 42 Pa. C.S. § 8522 is to consider whether the Commonwealth employee was acting within the scope of his or her employment; whether the alleged act which causes injury was negligent and damages would be recoverable but for the availability of the immunity defense; and whether the act fits within one of the nine exceptions to sovereign immunity.

*LaFrankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992) (citing *Yakowicz v. McDermott*, 548 A.2d 1330 (Pa. Cmwlth. 1988), *appeal denied*, 565 A.2d 1168 (Pa. 1989)).

Here, the facts as pled demonstrate that the Defendants were acting within the scope of their employment because the actions Martin complains of were of the kind and nature the Defendants were employed to perform at SCI-Albion, the allegations occurred substantially within authorized time and space limits, and were actuated at least in part by a purpose to serve the Department. *See Schell v. Guth*, 88 A.3d 1053, 1067 (Pa. Cmwlth. 2014) (citing *Sanchez v. Montanez*, 645 A.2d 383 (Pa. Cmwlth. 1994)).

Martin also claims that the Defendants are not entitled to sovereign immunity because their actions amount to willful misconduct. In contrast to the protection afforded Commonwealth employees, local agency employees may still be held liable for willful misconduct even if they acted within the scope of their duties. *See* 42 Pa. C.S. § 8545. However, no such provision exists for

6

Commonwealth employees, and immunity still applies to those employees even if the conduct that caused the injury was willful. *See Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Cmwlth. 2013); *Holt v. Northwest Pennsylvania Training Partnership Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Cmwlth. 1997); *LaFrankie*.

For these reasons, the trial court did not err in determining that the Defendants were entitled to the defense of sovereign immunity.

## C.

Martin also contends that the trial court erred in deciding that he did not make out an Eighth Amendment claim because he failed to establish any personal involvement of the Defendants or that the conditions he was subject to constituted cruel and unusual punishment. Martin fails to make out a claim on either basis.

## 1.

To be liable for constitutional claims under 42 U.S.C. § 1983,[7] a government defendant must have personal involvement in the alleged wrongdoing.

---

[7] Section 1983 is not a source of substantive rights, but a means to redress violations of federal law by state actors. *Gonzaga University v. Doe*, 536 U.S. 273, 284-85 (2002). Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

**(Footnote continued on next page…)**

*Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Moreover, allegations of personal involvement must be made with particularity, *Rode*, 845 F.2d at 1207, and liability cannot be predicated solely on the theory of respondeat superior. *See id.*; *Rizzo v. Goode*, 423 U.S. 362 (1976).

The only allegation against Sgt. Maloney was that he refused Martin's request to use the toilet facilities and told him to go back to his cell. Martin's allegation against Defendants Kosinski, Varner and Superintendent Giroux is that they responded to his grievance in a way he did not like. These allegations do not demonstrate that the Defendants were personally involved in the damage to the water tower that caused the three-day water outage at SCI-Albion or in the resulting unsanitary prison conditions alleged in the complaint.[8] Moreover, prisoners have no constitutionally-protected right to a grievance procedure and participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement for purposes of § 1983. *See Brooks v. Beard*, 167 Fed. App'x 923, 925 (3d Cir. 2006); *Rode*, 845 F.2d at 1208; *Atwell v. Lavan*, 557

---

**(continued…)**

> injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

[8] While Martin alleges that Superintendent Giroux denied an agency purchasing request to fix a cracked valve in the water tower, he does not allege that this failure caused the water emergency at SCI-Albion over a year later. In addition, Martin does not allege that Superintendent Giroux ordered that the water be shut off, was personally responsible for the conditions in his cell or denied him access to running water or a functioning toilet.

8

F. Supp. 2d 532, 547 (M.D. Pa. 2008). Because Martin failed to allege facts that would establish any of the Defendants' actions caused a purported violation of his Eighth Amendment rights, the trial court properly found that he failed to make out a cause of action on that basis against any of the Defendants.

## 2.

Martin also failed to state an Eighth Amendment claim for the conditions of his confinement during the water outage. While the Eighth Amendment does not mandate comfortable prisons, *Tindell v. Department of Correction*, 87 A.3d 1029, 1041 (Pa. Cmwlth. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)), it does impose a duty on prison officials to provide humane conditions of confinement. As such, "[p]rison officials must ensure that inmates are not deprived of the 'minimal civilized measure of life's necessities,' including food, clothing, shelter, sanitation, medical care and personal safety." *Tindell*, 87 A.3d at 1041 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Nevertheless, extreme deprivations are required to establish a conditions of confinement claim, *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992), and "prison conditions may be 'restrictive and even harsh' without violating the Eighth Amendment." *Neely v. Department of Corrections*, 838 A.2d 16, 20 (Pa. Cmwlth. 2003) (quoting *Rhodes*, 452 U.S. at 347). To establish an Eighth Amendment conditions of confinement claim, the alleged deprivation must be, objectively, sufficiently serious, and the prison official must have a sufficiently culpable state of mind, i.e., one of "deliberate indifference" to inmate health or safety. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). As the United States Supreme Court has established:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.

Here, the Defendants were aware of the lack of water at SCI-Albion and acted reasonably by providing Martin and other prisoners at the facility with access to portable toilets and drinking water. Martin admits that these amenities were provided during the water outage, and the supporting documentation attached to his complaint demonstrates that he was not deprived of the minimal civilized measure of life's necessities. This fact also demonstrates the Defendants were not deliberately indifferent as they did not disregard an excessive risk to Martin's health and safety. While the lack of water and toilet facilites were certainly unpleasant, they did not rise to the standard to show cruel and unusual punishment necessary to make out an Eighth Amendment claim. Because Martin failed to establish both the objective and subjective prongs of an Eighth Amendment claim, the trial court did not err in dismissing that claim.

Accordingly, for the foregoing reasons, the order of the trial court is affirmed.

_____
DAN PELLEGRINI, Senior Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sidney Martin,                                  :
                        Appellant               :
                                                :
            v.                                  : No. 1934 C.D. 2016
                                                :
Nancy Giroux, Sgt. Maloney,                     :
Melanie Kosinski, and Dorina Varner,            :
sued in their individual and official           :
capacities                                      :

# **O R D E R**

AND NOW, this 26th day of May, 2017, the order of the Court of Common Pleas of Erie County in the above-captioned matter is hereby affirmed.

_____
DAN PELLEGRINI, Senior Judge